UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MACKENZIE COREY BURSE,

        Plaintiff,

v.

REGISTERED NURSE KOMOROWSKI,

        Defendant.

Case No. 12-CV-912-JPS

ORDER

    Plaintiff Mackenzie Corey Burse, a Wisconsin inmate proceeding *pro se*, brings this action under 42 U.S.C. § 1983 against defendant Mary Alsteen ("Nurse Alsteen"),[1] a registered nurse working at Green Bay Correctional Institution in Green Bay, Wisconsin, alleging that Nurse Alsteen violated the Eighth Amendment's prohibition against cruel and unusual punishment by deciding not to request physician attention for Plaintiff's reported skin abnormalities at any point between November 25, 2009, and December 7, 2009. (Docket #1).[2]

    Before the Court are the parties' respective motions for summary judgment. (Docket #35 and #51).

---

[1] Defense counsel informs the Court that Registered Nurse Mary Komorowski has a new last name: Alsteen. (Docket #51).

[2] Plaintiff's complaint also brings claim of deliberate indifference against a guard and two administrators at his prison. (Docket #1). At screening, this Court dismissed Plaintiff's complaint altogether. (Docket #5).

On appeal, the Seventh Circuit concluded that Plaintiff's complaint stated a plausible claim against Nurse Alsteen. (Docket #20). Therefore, the scope of this case is circumscribed accordingly.

1. APPLICABLE LAW

   1.1 Eighth Amendment Claim

"'[D]eliberate indifference to serious medical needs' of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the [Eighth Amendment to the] Constitution. [*Estelle v. Gamble*, 429 U.S. 97,] 104 [(1976)]." Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 828 (7th Cir. 2009).

> A successful deliberate indifference claim is comprised of both an objective and a subjective element. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). First, an inmate must demonstrate that, objectively, the deprivation he suffered was "sufficiently serious; that is, it must result in the denial of the minimal civilized measure of life's necessities." *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). In the medical care context, this objective element is satisfied when an inmate demonstrates that his medical need itself was sufficiently serious. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). A medical need is considered sufficiently serious if the inmate's condition "has been diagnosed by a physician as mandating treatment or…is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Notably, "[a] medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). Second, an inmate must establish that prison officials acted with a "'sufficiently culpable state of mind'" to support liability under § 1983. Greeno, 414 F.3d at 653 (quoting *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970). Although negligence or inadvertence will not support a deliberate indifference claim, an inmate need not establish that prison officials actually intended harm to befall him from the failure to provide adequate care. *Walker*, 293 F.3d at 1037. "[I]t is enough to show that the defendants

knew of a substantial risk of harm to the inmate and disregarded the risk." *Greeno*, 414 F.3d at 653.

Applying the above to prison medical professionals, we have stated that "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances." *Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008) (internal quotation marks omitted). "A medical professional acting in his professional capacity may be held to have displayed deliberate indifference only if the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* (internal quotation marks omitted).

*Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011).

In cases where prison officials delayed rather than denied medical assistance to an inmate, courts have required the plaintiff to offer "verifying medical evidence" that the delay (rather than the inmate's underlying condition) caused some degree of harm. *See, e.g., Petty v. County of Franklin*, Ohio, 478 F.3d 341, 344 (6th Cir. 2007); *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005); *Surber v. Dixie County Jail*, 206 Fed. Appx. 931, 933 (11th Cir. 2006). That is, a plaintiff must offer medical evidence that tends to confirm or corroborate a claim that the delay was detrimental.

[The Seventh Circuit] adopted the verifying medical evidence requirement in *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) (citing *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995)). In *Langston*, the plaintiff claimed that a one-hour delay in medical treatment after he was raped by another inmate violated the Constitution. 100 F.3d at 1240. [The Seventh Circuit] affirmed summary judgment in favor of the defendants because the plaintiff did not produce any evidence that the one-hour delay had a detrimental effect; the rape had

> already occurred, and there was no evidence that it had caused any serious physical injury. Id. at 1241.
>
> …
>
> Clearly, expert testimony that the plaintiff suffered because of a delay in treatment would satisfy the requirement. *See, e.g., Coleman v. Rahija*, 114 F.3d 778, 785 (8th Cir. 1997) (concluding that expert testimony satisfied the verifying medical evidence requirement). On the other hand, evidence of a plaintiff's diagnosis and treatment, standing alone, is insufficient *if it does not assist the jury in determining whether a delay exacerbated the plaintiff's condition or otherwise harmed him.* See Laughlin , 430 F.3d at 929.

*Williams v. Liefer*, 491 F.3d 710, 714-715 (7th Cir. 2007) (emphasis added).

### 1.2    Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In other words, in determining whether a genuine dispute of material fact exists, the court must construe all reasonable inferences in favor of the non-movant. *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir. 1983).

2.  FACTS[3]

On October 18, 2009, Burse submitted a [Health Service Request form ("HSR")] stating:

> The recurring rash that has been periodically appearing on my body over the years has returned. The rash is more aggressive than it has been on previous occasions. The rash has created fungus – patches on my skin, and they ozze pus, bleed and itch. Certain areas of my body that contain only the rash not only itches and burns, but also emits pus.
>
> Either the pus from the rash or the rash itself is contagious, because the fingers that I have been to apply pharmaceuticals to the rash and the fungus – patches have developed the rash. From handling my penis with those fingers, my penis has began to develop the rash and itch.
>
> Since I have been using Tolnaftate, Hydrocortisone cream and triple antibiotic and it does not work, I would like to be seen by health services.

(Docket #65, ¶ 47) (sic).[4]

On November 27, 2009 Alsteen received and triaged a HSR from Burse which he dated November 25, 2009. The HSR states as follows:

> On October 23, I saw the nurse about the recurring rash that has been appearing on my body. The nurse signed me up to see the doctor and gave me a bottle of anti-itch lotion to put on the rash. I haven't seen the doctor and the lotion semi stops the rash from itching but does not

---

[3] This section addresses only the parties' core proposed material facts.

[4] Undisputed.

> stop the rash from spreading or appearing in new placed on my body. Two new spots have appeared on my body and the rash is now spreading between the area on the right side of my nose and my eye. My eye has began to itch like the rash does and also emits fluid like the rash does after itching. I'm afraid that the rash will spread to my eye and would like something stronger than the lotion given to me by the nurse so that the rash can be contained. My grandmother has a problem with the same rash that I have. She uses Desoximethasome for her rash. Can I have some of this until I can see the doctor?

(Docket #65, ¶ 52).[5]

According to Alsteen, "[She] did not see anything in Burse's November 25, 2009 HSR that indicated a need to have Burse seen by a doctor sooner than December 7, 2009." (Docket #54, at 6).

On December 7, 2009, Plaintiff was seen by a prison physician who observed, among other things, "crusty, weeping sores, three to five millimeters, in his beard and peri-oral region" which gave rise to an order for a Herpes serum antibody screen. (Docket #65, ¶ 64).[6] That test came back positive for Herpes Simplex I and II antibodies IgG and so, based on the appearance and location of the sores the physician observed on Plaintiff's face on December 7, 2009, the physician assessed that they were caused by Herpes Simplex I. (Docket #65, ¶ 68).[7]

---

[5] Undisputed.

[6] Undisputed.

[7] Undisputed.

3. ANALYSIS

With the benefit of the foregoing law and factual backdrop, this Court finds that a reasonable jury could find in favor of either party as to whether Nurse Alsteen acted with a sufficiently culpable state of mind when she decided not to request earlier physician attention for Plaintiff's reported skin abnormalities. Therefore, the parties' respective motions for summary judgment will be denied. *See* Fed. R. Civ. P. 56(a).

Accordingly,

IT IS ORDERED that the parties' respective motions for summary judgment (Docket #35 and #51) be and the same are hereby DENIED.

Dated at Milwaukee, Wisconsin, this 29th day of January, 2014.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge